


**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**ERIC MCMAHAN, et al.,**

**Plaintiffs,**

**v.** **Civil Action No.: 2:10cv278**

**ADEPT PROCESS SERVICES, INC.,**

**Defendant.**

## OPINION AND ORDER

This matter comes before the Court following a September 21, 2011 hearing on Defendant's Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11, Doc. 33, and Motion for Sanctions pursuant to 28 U.S.C. § 1927, Federal Rules of Civil Procedure 37(c) and 26(g), and this Court's inherent powers, Doc. 35. For the reasons stated at the hearing and herein, the Court **DENIES** Defendant's motions.

### I. PROCEDURAL HISTORY

On June 15, 2010, Plaintiffs Eric L. McMahan ("McMahan"), James E. Cooke ("Cooke"), Christopher E. Brown ("Brown"), Joshua Wiggins ("Wiggins"), Alexander F. Barranger ("Barranger"), Peter Milton ("Milton"), Jeffrey Harrell ("Harrell"), and Alex Rogers ("Rogers") (collectively, "Plaintiffs") filed their complaint against Adept Process Services, Inc. ("APS") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.[1] Doc. 1. Plaintiffs McMahan, Cooke, Harrell, and Rogers are, or were, employed by APS as Captains at

[1] Plaintiffs initially filed suit against Defendants Adept Process Services, LLC and Adept Process Services, Inc. On November 19, 2010, the parties filed a joint motion to dismiss Count II of Plaintiffs' complaint and Defendant Adept Process Services, LLC. Doc. 12. The Court granted the parties' joint motion to dismiss on November 22, 2010. Doc. 16. Adept Process Services, Inc. is, therefore, the sole remaining defendant in this case.

Naval Station Norfolk in Norfolk, Virginia.[2] Doc. 22. Plaintiffs Brown, Wiggins, Barranger, and Milton are, or were, employed as deckhands.[3] Id. Collectively, Plaintiffs claim that APS willfully violated the overtime pay provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and is, therefore, liable to Plaintiffs "in the total amount of Plaintiffs' unpaid overtime compensation and an additional equal amount as liquidated damages, for the three year period immediately preceding the commencement of this action, as well as an amount for reasonable attorney's fees and interest, together with the costs and expenses of this action."[4] Doc. 1 at ¶¶ 34–36.

On March 24, 2011, Defendant Adept Process Services, Inc. ("APS") moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). Doc. 21. At the conclusion of a May 9, 2011 hearing, the Court granted APS's motion for summary judgment on the ground that Plaintiffs' asserted claims for overtime pay were expressly barred by 29 U.S.C. § 213(b)(6), which exempts from the FLSA's overtime pay requirements "any employee employed as a seaman." Doc. 30.

On May 18, 2011, APS filed two motions for sanctions: a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), Doc. 33, and a motion for sanctions pursuant to 28 U.S.C. § 1927, Federal Rules of Civil Procedure 37(c) and 26(g) ("Rules 37(c) and 26(g)"), and this Court's inherent powers, Doc. 35. APS requests an award of sanctions against Plaintiffs' counsel, Mr. Keith Leonard ("Leonard") and Huffman and Huffman, Brothers-in-Law

---

[2] The parties jointly stipulate that "[t]he term 'Captain(s)' means persons employed by APS as masters of the Boats," and "[t]he term 'Boat(s)' refers to the small tugboats operated by APS at Naval Station Norfolk, Virginia." Doc. 24.

[3] The parties stipulate that "[t]he term 'Deckhand' means persons employed by APS as crewmembers on the Boats." Id.

[4] Plaintiffs' complaint originally contained a second count against APS—"Count Two (Retaliation Claim)"—however, as mentioned in note 1, supra, the parties filed a joint motion to dismiss Count Two of Plaintiffs' complaint and Defendant APS on November 19, 2010, Doc. 12, and the Court granted that motion on November 22, 2010, Doc. 16.

P.L.L.C. ("Huffman and Huffman"). Docs. 33, 35. The parties jointly moved to amend the briefing schedule for APS's two sanctions motions on May 24, 2011. Doc. 41. The Court granted that joint motion and ordered Plaintiffs to file a single response to APS's two motions by June 20, 2011. Doc. 42. Plaintiffs filed a timely response to APS's motions for sanctions, Doc. 49, and APS thereafter filed a timely reply to Plaintiffs' response, Doc. 50. A hearing on the motions was held on September 21, 2011.

## II. ANALYSIS

### A. Motion for Sanctions Pursuant to Rule 11

Under Rule 11, an attorney must make a reasonable inquiry as to whether "a complaint is well grounded in both fact and law, and not filed for an improper purpose."[5] Myers v. Sessoms & Rogers, P.A., 781 F. Supp. 2d 264, 266 (E.D.N.C. 2011). The primary purpose of Rule 11 sanctions "is not to compensate the prevailing party, but to 'deter future litigation abuse.'" Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2002) (quoting In re Kunstler, 914 F.2d 505, 522 (4th Cir. 1990)). "An assertion of law violates Rule 11(b)(2) when, applying a standard of objective reasonableness, it can be said that 'a reasonable attorney in like circumstances could [not have] believe[d] his actions to be . . . legally justified.'" In re Sargent,

[5] Rule 11 provides in relevant parts:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11.

136 F.3d 349, 352 (4th Cir. 1998) (quoting Cabell v. Petty, 810 F.2d 463, 466 (4th Cir. 1987)). The fact that a legal position is ultimately unsuccessful does not warrant sanctions, as "[a]ttorneys must be allowed to seek good faith expansions and changes of the law." Myers, 781 F. Supp. 2d at 268 (citing Blue v. Dep't of Army, 914 F.2d 525, 534 (4th Cir. 1990)). Factual allegations violate Rule 11(b)(3) when such allegations "are 'unsupported by *any* information obtained prior to filing.'" Morris v. Wachovia Sec., Inc., 448 F.3d 268, 277 (4th Cir. 2006) (quoting Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991)).

APS asserts that Leonard and Huffman and Huffman should be subjected to sanctions pursuant to Rule 11(c) for their failure to comply with Rule 11(b). Doc. 34 at 1. APS contends that "Mr. Leonard and his firm filed the Complaint in this matter against APS without any basis in law or fact, and indeed contrary to existing law." Id. APS insists that Plaintiffs' complaint was "utterly without merit," "[n]o reasonably attorney would have filed it, and no responsible attorney would have maintained it." Id. at 2.

In support of its position, APS alleges that Leonard or his non-attorney "litigation manager," James McMahan, developed and encouraged Plaintiffs' lawsuit. One plaintiff in this case, Chris Walker ("Walker"), signed an affidavit stating that he was encouraged to participate in a lawsuit against APS, was instructed to recruit at least five plaintiffs to "make it a lawsuit," and does not recall James McMahan or Leonard mentioning the "seaman's exemption" of 29 U.S.C. § 213(b)(6). Doc. 34, Ex. 1. Another plaintiff, Eric L. McMahan, the nephew of James McMahan, signed a declaration contesting Walker's affidavit. Doc. 49, Ex. 2. Eric McMahan indicated that he initiated contact with Leonard, who did discuss the seaman's exemption, and that Walker was a willing participant in the lawsuit until he was promoted by APS. Eric McMahan also claims he was fired by APS. Two letters from Plaintiffs' counsel, a letter from

defense counsel, and a letter from Jack Van Zandt, President of APS, were also in the record. The Van Zandt letter could be construed as claiming that workers similarly situated as the plaintiffs with APS were not seamen.[6]

As originally filed, Plaintiffs' complaint contained two counts: Count One alleged that APS inappropriately failed to pay Plaintiffs overtime pay, in violation of the FLSA; Count Two alleged that APS fired Plaintiff Eric L. McMahan in retaliation for contemplating a claim under the FLSA. Doc. 1. APS contends that Count Two was "utterly unsupported by existing law," and, although APS alleges it advised Leonard of the controlling law before and after Leonard's filing of the complaint, Leonard refused to dismiss Count Two until after APS incurred the expense of preparing a Partial Motion to Dismiss.[7] Doc. 34 at 6.

With regard to Count One, APS maintains that sanctions are appropriate because Plaintiffs' complaint omits mention of the FLSA's express exemption from overtime pay of persons employed as seamen, and Leonard failed to allege or identify any facts that would support a finding that Plaintiffs engaged in any work other than seamen's work. Id. at 7. APS asserts that any reasonable attorney, prior to filing Plaintiffs' suit, would have researched the FLSA's seaman's exemption and reviewed the Department of Labor regulations explaining that exemption's application. Id. at 7–8.

---

[6] No evidence was presented at the September 21, 2011 hearing upon these factual disputes which pre-dated the filing of the complaint. Faced with these disputed claims, the Court had no basis upon which to resolve the pre-filing disputes and did not consider them in resolving the motions which are the subject of this Order.

[7] In response to APS's argument concerning Count Two, Leonard alleges that he discussed the merits of Count Two with APS's counsel and explained his belief that a split among the Circuit Courts of Appeals supported Count Two. Subsequently, following consultation with Plaintiff Eric L. McMahan, Leonard decided to dismiss Count Two due to existing Fourth Circuit precedent and because Plaintiff McMahan did not desire reinstatement, the most likely available redress. Doc. 49 at 11–12. However, prior to the dismissal of Count Two, APS filed its motion to dismiss that count. Id. at 12. After APS filed that motion to dismiss, the parties filed a joint motion to dismiss Count Two, which the Court granted. Doc. 16. Again, these discussions and filing are not being considered by the Court in deciding the subject motions.

Subsequent to filing the complaint, Leonard argued that Plaintiffs were entitled to overtime pay from APS because the time Plaintiffs spent waiting to work on APS's boats was not exempt seamen's work under the FLSA but was instead substantial nonseamen's work. Doc. 23. APS characterizes Leonard's theory of Plaintiffs' case as "ludicrous" and argues that his position "so badly misconstrues the law that no reasonable attorney could objectively believe it to have any chance of success under existing precedents." Doc. 34 at 8, 10. APS concludes its argument for sanctions as follows:

> Mr. Leonard filed a claim that was statutorily barred. He plainly did so without a modicum of legal research. More seriously, even after opposing counsel called his attention to the relevant law, he ignored it, and filed his case any way. After being directed to the relevant law again—by an attorney who at one time was the senior attorney for the U.S. Department of Labor—he ignored it again. After depositions of the Plaintiffs made it clear that the facts confirmed the application of the statutory exemption, he still ignored the law. When the situation was noted to his law firm's managing partners, *they* ignored it. Accordingly, the award of sanctions against Mr. Leonard and Huffman and Huffman is particularly appropriate.

Id. at 14. APS requests sanctions in the amount of $100,000 against Leonard and Huffman and Huffman or an amount the Court deems just. Id. at 15.

In response to APS's argument concerning Count One, Leonard and Huffman and Huffman contend that their legal theory was pursued in good faith and presented a reasonable argument. Doc. 49 at 4. Leonard informs that he conducted a thorough factual investigation and reviewed the relevant case law and statutes prior to filing Plaintiffs' complaint. Id. Afterward, he pursued a good faith argument on behalf of his clients, and, therefore, sanctions should not be imposed: "The fact that summary judgment was ultimately awarded to APS does not alter this Court's analysis and it is certainly not a reason to abandon the American Rule, which mandates that parties are to bare their own legal fees." Id. (citing In re Crescent City Estates, LLC, 588 F.3d 822, 825 (4th Cir. 2009), in which the Fourth Circuit noted, "Under the American Rule, 'the

prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975))).

Regarding the merits of his theory of Plaintiffs' case, Leonard contends that "he took the position that because Plaintiffs spent more than 20% of their time on standby, the time was non-exempt and subject to overtime pay. He reasoned that because they were permitted to engage in substantial personal activities which were not seaman's work they were not seamen for purposes of the exemption." Id. at 5. "Leonard concluded that a reasonable case could be made to extend existing law or make new law." Id. at 6. Leonard maintains that "[a] lawyer should not be required to risk personal liability merely for acting in a representational capacity or for seeking to place a client in a more favorable litigation posture." In re Crescent City Estates, LLC, 588 F.3d at 830 (citing DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999)). Leonard points out that "[g]enerally, an attorney is held liable in a representational capacity only when he engages in misconduct—not for legal judgments," and "[t]he standard for imposing sanctions on legal judgment is high, usually requiring vexatiousness, malfeasance, bad faith, or the like." Id. (citing 28 U.S.C. § 1927; Fed. R. Civ. P. 11).

The fact that Plaintiffs' claims did not survive a motion for summary judgment does not warrant the imposition of sanctions in this case. As the Court recognized in its order granting APS summary judgment, "[t]he line of demarcation between seamen and non-seamen is not distinctly drawn, and probably cannot be. It depends a good deal upon the facts in each case, especially upon the character of the work that is principally engaged in." Walling v. Bay State Dredging & Contracting Co., 149 F.2d 346, 351 (1st Cir. 1945). Leonard could not find a seaman's exemption-specific case (i) expressly ruling that standby time in which seamen were allowed to engage in personal activities was equivalent to seaman's work, or (ii) ruling out the

possibility that such standby time might qualify as substantial nonseaman's work. The somewhat murky and fact-dependent nature of the FLSA's seaman exemption is in no small part due to the fact that litigants grappling with this exemption must necessarily resort to DOL regulations for guidance. Although the DOL regulations in this case were very well researched and promulgated with express citations to legal authorities, an attorney in Leonard's position is still afforded more leeway due to the fact-dependent nature of this type of case. Regulations interpreting statutes often reflect the compromise and expediency inherent in a statute's enactment, and such regulations are commonly colored by the bureaucratic processes involved in their promulgation. Attorneys may, therefore, be given more leeway in advancing illogical arguments when dealing with bureaucratic regulations; such regulations may not reflect the logic and consistency inherent in the development of the common law on a case by case basis.

For these reasons, Leonard may be forgiven—and not sanctioned—for the arguments he advanced in opposition to APS's motion for summary judgment and at the May 9, 2011 hearing. Notably, at the May 9, 2011 hearing, the Court posed difficult and penetrating questions to Leonard, and his responses were courteous and professional, if not, in the Court's view, logical. Although counsel for Plaintiffs did not comply with Local Rule 56(B) in responding to Defendant's "Statement of Undisputed Facts," it is noteworthy that Plaintiffs' counsel did not challenge these facts in their briefing or oral argument, nor did the accused counsel misstate or misrepresent these facts.

The finger pointing as to whether or not and the extent of counsel's research on the seaman's exemption is in dispute, and the Court cannot award sanctions on these grounds. While the existing precedent did not support such counsel's position "on all fours," there is no existing precedent which is contrary to Plaintiffs' position based upon the particular facts of this

case. Perhaps the lack of such precedent suggests the lack of a logical factual basis for counsel's position, but a lack of logic is a highly questionable basis for the imposition of sanctions. The Court cannot conclude that Leonard and Huffman and Huffman advanced Count I or Count II without evidentiary support or that either count was unwarranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Accordingly, the Court **DENIES** APS's motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Doc. 33.

**B. Motion for Sanctions Pursuant to 28 U.S.C. § 1927, Rules 37(c) and 26(g), and the Court's Inherent Powers**

**1. Sanctions Under 28 U.S.C. § 1927**

APS moves for sanctions against Leonard and Huffman and Huffman pursuant to 28 U.S.C. § 1927 ("§ 1927"), mostly on the same grounds advanced in support of its motion for sanctions pursuant to Rule 11. APS contends that Leonard's refusal to withdraw Plaintiffs' claims long after those claims' lack of merit became clear unreasonably and vexatiously multiplied these proceedings. Doc. 36 at 12.

Title 28, United States Code, Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "Section 1927 sanctions are imposed on attorneys who greatly multiply the proceedings . . . ." Allie v. Whole Foods Mkt. Grp., Inc., 746 F. Supp. 2d 773, 777 (E.D. Va. 2010). Whether or not to impose § 1927 sanctions is a decision left to the discretion of the district court. See La Rouche v. Nat'l Broadcasting Co., 780 F.2d 1134, 1140 (4th Cir. 1986)

("Whether to impose such sanctions can best be decided by the district court, which has first hand knowledge of counsel's conduct in the course of the action.").

For the same reasons sanctions under Rule 11 are unwarranted, this Court declines to impose § 1927 sanctions. First, Leonard was unable to find any case ruling out the possibility that under this particular set of facts, the seaman's exemption would or would not apply. Second, Leonard was forced to deal with an area of the law unlike the common law and thus, did not have the wisdom of consulting clearly-developed case law resulting from centuries of litigation. As such, an attorney in Leonard's position is afforded more leeway as the nature of the case is dependent upon the interpretation of statutes and regulations. Finally, and perhaps most importantly, at the May 9, 2011 hearing, Leonard conducted himself in a courteous and professional manner. Leonard never retreated from nor misrepresented his position and maintained a level of courtesy and poise under difficult questioning from the Court. Accordingly, the Court **FINDS** that Leonard did not greatly multiply these proceedings through vexatious or unreasonable conduct and **DENIES** APS's motion for sanctions pursuant to § 1927.

**2. Rule 37 Sanctions**

APS moves for sanctions against Plaintiffs pursuant to Rule 37. Specifically, APS contends that an award of expenses incurred is appropriate in this case because of Plaintiffs' failure to admit facts concerning their job duties. Doc. 36 at 18.

Rule 37(c)(2) provides:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
> (A) The request was held objectionable under Rule 36(a);
> (B) the admission sought was of no substantial importance;

> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
> (D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2).

APS contends that sanctions should be imposed on Plaintiffs—Plaintiffs, not Leonard or Huffman and Huffman—under Rule 37 because Plaintiffs failed to comply with Rule 36(a)(4), governing Requests for Admission,[8] when they improperly failed to admit matters requested by APS. Doc. 36 at 16–20. APS argues that as a result of Plaintiffs' improper and inexcusable denials, APS was forced to incur "the costs of preparing for, conducting, and reviewing depositions, and the costs associated with the subsequent Joint Stipulation (Docket No. 24)," and APS seeks to recover those expenses from Plaintiffs. Id. at 19.

APS maintains that Plaintiffs improperly denied the following Requests for Admission, which were later proven to be true:

> (1) Admit that at all times you were employed by APS, you were an at-will employee.
>
> (2) Admit that you were required to hold a valid Master's license to be employed as a Captain with APS.
>
> (3) Admit that you would not be authorized to perform the duties and responsibilities of a Captain for APS at Naval Station Norfolk if you did not have a valid Master's license.
>
> (4) Admit that you recorded your on-duty boat-time with APS as sea time for purposes of maintaining your U.S. Merchant Marine Officer license.

---

[8] Rule 36(a)(4) provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of the matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).

(5) Admit that a day of sea time is comprised for eight hours of watchstanding or day work on a vessel.

(6) Admit that the job duties and responsibilities listed in a. through h. in request 26 were your primary duties [request 26 listed: "a. operation of the craft, b. safety of the crew, c. safety of the craft, d. primary radio operator, e. primary radar/navigational aids operator, f. administrative boat/maintenance/deficiency logs, g. accident/incident reports, h. maintain appropriate licenses"].

(7) Admit that when you were not actively operating the boat to which you were assigned, you were on standby to operate the boat to which you were assigned.

(8) Admit that your standby duties were related to the readiness or the operating of the boat to which you were assigned.

(9) Admit that at all times you have been employed as a Deckhand with APS, you have worked under the direction of a Captain on the boat to which you were assigned.

(10) Admit that during those times that the boat to which you are assigned was not underway, you performed various tasks related to the readiness of the boat, including routine operator-type maintenance on the boat.

Id. at 17–18.

Leonard and Huffman and Huffman contend that Plaintiffs believed their responses to APS's Requests for Admission to be accurate, "given the underlying facts and the way the requests were written." Doc. 49 at 21. With regard to Requests for Admission Nos. 5–10, Leonard and Huffman and Huffman contend that Plaintiffs' denials of those Requests for Admission simply exemplify Plaintiffs' theory of their case:

> Plaintiffs' legal argument was that the time they spent on call was non-exempt time subject to overtime pay because they were permitted to engage in personal activities that did not constitute seaman's work. The Plaintiffs' actual job duties were not in dispute; however, the nature of such duties (i.e. whether they were related to the "readiness of the boat") was disputed. In accordance with Plaintiffs' interpretation of their job duties and the theory of their case, Plaintiffs properly denied some of APS' requests for admissions.

Id. at 22. With regard to Requests for Admission Nos. 1–4, Leonard and Huffman and Huffman argue that Plaintiffs' denials of these requests, whether or not improper, certainly would not have compelled APS to conduct depositions because such requests were of no substantial importance to the issue of Plaintiffs' off-the-boat activities. Id. at 23.

This Court finds Leonard's and Huffman and Huffman's arguments to be persuasive. The case turned on the proper classification of Plaintiffs' duties: seaman or nonseaman. Plaintiffs maintained a conception of their duties that ultimately failed to raise a genuine issue of material fact as to whether those duties constituted substantial nonseaman's work. However, Plaintiffs' misguided conception of their duties and ultimately unsuccessful legal theory does not warrant the imposition of sanctions under Rule 37(c)(2).

Plaintiffs denied the Requests for Admission they felt could be properly denied. Plaintiffs denied Request for Admission No. 7 because they believed that they were not on standby to operate boats when they were allowed to go to the gym, go home, go to the store, play football, read in their cars, run errands, or engage in other personal activities. In prevailing on its motion for summary judgment, APS did not prove that Plaintiffs were indeed on standby when not actively operating their boats; rather, in establishing that there were no genuine issues of material fact concerning whether the work Plaintiffs performed for APS was seaman's work and, therefore, exempt under the FLSA, APS showed that Plaintiffs performed no substantial nonseaman's work. Plaintiffs' denials of Requests for Admission Nos. 8–10 likewise offer no basis for imposing Rule 37 sanctions. Plaintiffs insisted that they were free to engage in personal activities or run errands while not operating APS's boats. Such activities and errands are unrelated to a boat's readiness and are not conducted under the direction of a Captain.

Further, Plaintiffs' denials of Requests for Admission Nos. 1-5 also fail to provide support for APS's motion for sanctions under Rule 37. As Leonard and Huffman and Huffman argue, those admissions were of no substantial importance to the issues this Court adjudicated. Plaintiffs' at-will statuses, Plaintiffs' various licenses, the manner in which Plaintiffs maintained their licenses, and the manner in which Plaintiffs calculated sea time for licensure purposes were not issues central to Plaintiffs' claims or of substantial importance to the Court's resolution of APS's motion for summary judgment. Again, APS's motion for summary judgment and the Court's resolution of this case turned on the proper classification of Plaintiffs' duties as employees of APS. Accordingly, the Court **DENIES** APS's motion for sanctions under Rule 37(c)(2).

**3. Rule 26 Sanctions**

APS moves for sanctions under Rule 26 against Leonard based on his conduct in signing Plaintiffs' denials of the Requests for Admission. Under Rule 26(g), an attorney must sign discovery responses to certify that such responses are consistent with the Rules and not interposed for any improper purpose. Fed. R. Civ. P. 26(g). Specifically, APS argues that "[s]anctions under Rule 26(g) are appropriate [because] Mr. Leonard signed the Responses to Requests for Admission, knowing that many of the responses were false, evasive, and/or in violation of Rule 36," and these actions "led directly to the costs of three days of depositions and continued litigation of this matter; all of which could have been avoided by truthful responses." Doc. 36 at 21.

Leonard signed discovery responses, which reflected Plaintiffs' conception of their duties at APS and their legal theory. Thus, the Court cannot conclude that Leonard improperly certified Plaintiff's discovery responses to (a) harass, cause unnecessary delay, or needlessly increase the

cost of this litigation or (b) to advance an argument unwarranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law. Fed. R. Civ. P. 26(g)(1)(B)(i)–(ii). Further, Plaintiffs' discovery responses were neither unreasonable nor unduly burdensome or expensive. Fed. R. Civ. P. 26(g)(1)(B)(iii). Accordingly, the Court **DENIES** APS's motion for sanctions pursuant to Rule 26(g)(3).

**4. The Court's Inherent Powers**

APS moves for sanctions against Plaintiffs and their counsel pursuant to the Court's inherent powers. APS argues in its motion for sanctions that this Court has "ample inherent authority to impose such supplemental sanctions as it deems appropriate." Doc. 36 at 21. In response, Leonard and Huffman and Huffman point out that bad faith or egregious misconduct is required before courts impose sanctions via their inherent powers. Doc. 49 at 25. In its reply brief, APS contends only that sanctions are appropriate here because Leonard's and Huffman and Huffman's conduct was "patently unreasonable." Doc. 50 at 14.

A court in this district, in SunTrust Mortgage, Inc. v. AIG United Guaranty Corporation, No. 3:09cv529, 2011 U.S. Dist. LEXIS 33118, at *39–*41 (E.D. Va. Mar. 29, 2011), recently clarified the circumstances that warrant the imposition of sanctions pursuant to the Court's inherent powers. Specifically, the SunTrust Mortg. court explained that the United States Supreme Court has cautioned that courts' inherent powers "'must be exercised with restraint and discretion,'" id. at *31 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)), but has also "outlined a rather broad array of implied powers that are available to sanction improper conduct during litigation," id. (citing Chambers, 501 U.S. at 43–47). The SunTrust Mortg. court also instructed that the Fourth Circuit has interpreted Chambers as authorizing the imposition of sanctions via the Court's inherent powers "'when a party deceives a court or abuses the process

at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the [judicial] process.'" Id. at *40–*41 (alteration in original) (quoting United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993)).

Leonard and Huffman and Huffman did not deceive the Court or otherwise abuse the Court's process at a level that is utterly inconsistent with the orderly administration of justice. Leonard never retreated from nor misrepresented his position and maintained a level of courtesy and poise under difficult questioning from this Court. As such, the Court **DENIES** APS's motion for sanctions under the Court's inherent powers.

## III. Conclusion

The Court **DENIES** Defendant's Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11, Doc. 33, and **DENIES** Defendant's Motion for Sanctions pursuant to 28 U.S.C. § 1927, Federal Rules of Civil Procedure 37(c) and 26(g), and this Court's inherent powers, Doc. 35. Having so ruled, the Court **DISMISSES AS MOOT** APS's motion to file a corrected Exhibit 2 to its rebuttal memorandum, Doc. 52, and **DISMISSES AS MOOT** Plaintiffs' motion for leave to file amended declarations in support of its brief in opposition to Defendant's motion for sanctions and costs, Doc. 54. Further, the Court **GRANTS** APS's motion for leave for Ms. Emily K. Hargrove to withdraw as an attorney for APS, Doc. 53.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED.**

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

*HENRY COKE MORGAN, JR*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: November 28th, 2011